544 So.2d 1010 (1989)
Carl Ray SONGER, Appellant,
v.
STATE of Florida, Appellee.
No. 72043.
Supreme Court of Florida.
May 25, 1989.
Steven M. Goldstein, Florida State University, College of Law, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Peggy A. Quince and Joseph R. Bryant, Asst. Attys. Gen., Tampa, for appellee.
*1011 PER CURIAM.
Carl Ray Songer appeals from a death sentence imposed upon resentencing. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
The procedural history of Songer's case is lengthy, but for present purposes only a short synopsis is necessary. In 1973 Songer walked away from a prison work-release program in Oklahoma. Several days later some hunters saw a Florida highway patrolman approach a car in which Songer and a companion were sleeping. The trooper looked into the car and a volley of shots rang out; the officer fell dead. The hunters captured Songer, who ultimately was convicted of first-degree murder and sentenced to death. This Court affirmed, Songer v. State, 322 So.2d 481 (Fla. 1975), but the Supreme Court of the United States reversed and remanded for a new sentencing hearing before the judge alone. Songer v. Florida, 430 U.S. 952, 97 S.Ct. 1594, 51 L.Ed.2d 801 (1977). After the trial judge again imposed the death penalty, we affirmed. Songer v. State, 365 So.2d 696 (Fla. 1978), cert. denied, 441 U.S. 956, 99 S.Ct. 2185, 60 L.Ed.2d 1060 (1979). A series of collateral attacks ensued, and eventually the Eleventh Circuit Court of Appeals, sitting en banc, ordered a new sentencing hearing in Songer v. Wainwright, 769 F.2d 1488 (11th Cir.1985).
Upon resentencing Songer was permitted to introduce mitigating evidence not offered before. The jury recommended death, and the trial judge once again imposed the death penalty, despite finding only one valid aggravating circumstance and several in mitigation.
Songer now urges us that his death sentence is invalid because it is disproportionate to others imposed. The aggravating circumstance in this case was that Songer was under a sentence of imprisonment in Oklahoma when the killing was committed. The three statutory mitigating circumstances found to be supported by the record were that the crime was committed while Songer was under the influence of extreme mental or emotional disturbance, that Songer's ability to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired, and that his age, twenty-three years old, was a factor.
The court also listed seven factors that were proven by a preponderance of the evidence: Songer's sincere and heartfelt remorse; his chemical dependency on drugs, which caused significant mood swings; his history of adapting well to prison life and using the time for self-improvement; his positive change of character attributes, as manifested in a desire to help others; his emotionally impoverished upbringing; his positive influence on his family despite his incarceration; and his developing strong spiritual and religious standards.
Long ago we stressed that the death penalty was to be reserved for the least mitigated and most aggravated of murders. State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974). To secure that goal and to protect against arbitrary imposition of the death penalty, we view each case in light of others to make sure the ultimate punishment is appropriate.
Our customary process of finding similar cases for comparison is not necessary here because of the almost total lack of aggravation and the presence of significant mitigation. We have in the past affirmed death sentences that were supported by only one aggravating factor, (see, e.g., LeDuc v. State, 365 So.2d 149 (Fla. 1978), cert. denied, 444 U.S. 885, 100 S.Ct. 175, 62 L.Ed.2d 114 (1979)), but those cases involved either nothing or very little in mitigation. Indeed, this case may represent the least aggravated and most mitigated case to undergo proportionality analysis.
Even the gravity of the one aggravating factor is somewhat diminished by the fact that Songer did not break out of prison but merely walked away from a work-release job. In contrast, several of the mitigating circumstances are particularly compelling. It was unrebutted that Songer's reasoning abilities were substantially impaired by his addiction to hard drugs. It also is apparent that his remorse is genuine. In concluding *1012 that Songer had undergone a positive change while in prison, the trial judge stated in the sentencing order:
c. Evidence was established that the Defendant has adapted well to a prison setting and has utilized his time for self improvement, and for developing insight into his past as shown by the testimony of Dr. Melvin Biggs, Dr. Harry Krop and Juan Ramos. Their further testimony was that the Defendant could adapt to prison life without risk of management problems or increased difficulty to prison authorities.
d. The Defendant has shown significant positive change in his character attributes as was evidenced by the testimony of the family, including Eugenea Hogue, son David, Dr. Melvin Biggs, Reverend Jamie Buckingham and Dr. Harry Krop. These positive changes have manifested themselves in an evident desire to help others.
... .
g. Evidence was established that over the period of time from the Defendant's initial arrest in 1973 to date, the Defendant has developed strong spiritual and religious standards. This was supported by the testimony of Dr. Melvin Biggs, Reverend Jamie Buckingham and Dr. Harry Krop who testified to the fact that the Defendant's religious convictions are real and not self serving. This is further supported by the testimony of Defendant's family, Juan Ramos, letters admitted into evidence and the taped interview.
Based upon the circumstances of this case, we believe the death penalty would be unfairly applied to Songer.
In light of our decision that the death penalty would be inappropriate, we find it unnecessary to consider the other issues Songer raises. We vacate Carl Ray Songer's death sentence and remand for the trial court to impose a term of life imprisonment with no possibility of parole for twenty-five years from the date of his original sentence.
It is so ordered.
OVERTON, McDONALD, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
EHRLICH, C.J., concurs with an opinion, in which BARKETT, J., concurs.
EHRLICH, Chief Judge, concurring.
I concur that the death penalty may not be imposed for this senseless killing of a law enforcement officer while in the course of his duties, for the reasons spelled out in the Court's opinion. There is a further reason, I believe that precludes the carrying out of the sentence of death imposed by the trial court.
The trial judge found one aggravating factor, namely, that the crime in question was committed while the defendant was under sentence of imprisonment imposed in the state of Oklahoma. Since the time of that finding and the imposition of the death sentence, the Oklahoma judgment and sentence have been declared to be invalid and vacated by a district court of that state. Consequently, the basis for the finding of the one aggravating factor no longer exists. While we do not have the authority in this proceeding to set aside the aggravating factor in question, if we were to uphold the death penalty, defendant could file a petition under Florida Rule of Criminal Procedure 3.850 to have the sentence of death set aside because of the action of the Oklahoma court, since under that circumstance, there would be no aggravating factor remaining but there would be several mitigating factors present.
BARKETT, J., concurs.